IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

ALAN E. THOMPSON, DARRELL G.
HINRICHSEN, KEITH P. FOGEL,
WALLACE E. ALM, and DONALD D.
BOE, on behalf of themselves and all
others similarly situated,

  Plaintiffs,

vs.

UNITED TRANSPORTATION UNION,

  Defendant.

No. C08-0065

**RULING ON MOTION TO AMEND COMPLAINT**

## TABLE OF CONTENTS

*I.*  *INTRODUCTION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.*  *ISSUES PRESENTED.* . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*III.*  *FACTUAL BACKGROUND.* . . . . . . . . . . . . . . . . . . . . . . . . 2

*IV.*  *PROCEDURAL HISTORY.* . . . . . . . . . . . . . . . . . . . . . . . . 3
  *A.*  *Initial Filing in State Court.* . . . . . . . . . . . . . . . . . . . . . 3
  *B.*  *First Removal to United States District Court.* . . . . . . . . . . . . 3
  *C.*  *Class Certification in State Court.* . . . . . . . . . . . . . . . . . . 4
  *D.*  *Defendant's Motion for Summary Judgment in State Court.* . . . . . . . 5
  *E.*  *Second Removal to United States District Court.* . . . . . . . . . . . 8
  *F.*  *Plaintiffs' Motion for Leave to Amend Petition in State Court.* . . . . . 9
  *G.*  *Third Removal to United States District Court.* . . . . . . . . . . . 10

*V.*  *DISCUSSION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
  *A.*  *Did Plaintiffs Timely File the Motion to Amend Complaint?* . . . . . 11
  *B.*  *Is Plaintiffs' Proposed Amendment Futile?* . . . . . . . . . . . . . 13

*VI.*  *CONCLUSION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*VII.*  *ORDER.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## I. INTRODUCTION

This matter comes before the Court on the Motion to Amend Complaint (docket number 9) filed by Plaintiffs on August 5, 2008, the Resistance (docket number 10) filed by the Defendant on August 21, 2008, and the Reply (docket number 11) filed by Plaintiffs on August 25, 2008. Plaintiffs request leave to amend and substitute their Petition/Complaint to allege an additional state law claim for promissory estoppel against Defendant.

## II. ISSUES PRESENTED

In deciding Plaintiffs' motion to amend, the Court must determine: (1) Whether Plaintiffs' motion was timely filed, and (2) whether the requested amendment is legally futile.

## III. FACTUAL BACKGROUND

Defendant United Transportation Union ("UTU") is an international labor organization certified to represent approximately 125,000 active and retired railroad employees. Plaintiffs, Alan E. Thompson, Darrell G. Hinrichsen, Keith P. Fogel, Wallace E. Aim, and Donald D. Boe, are five current or former railroad employees and UTU members. Plaintiffs worked for Chicago and Northwestern Railway Company ("CNW"), which merged with Union Pacific Railroad Company ("Union Pacific") in 1995. Plaintiffs' lawsuit stems from a settlement agreement entered into between UTU and Union Pacific on June 12, 1996, which resolved outstanding grievance claims filed by UTU on behalf of CNW employees prior to the merger.

The agreement provided a lump sum payment of $9.8 million plus interest to settle all the grievance claims submitted by CNW employees or by UTU on behalf of CNW employees. On August 12-13, 1996, UTU's General Committee of Adjustment ("General Committee") met to discuss the distribution method for the money in the settlement fund. The General Committee decided that three-member review panels would determine the validity of each claim and assign a monetary value to those claims. Believing that the

2

value of the grievance claims would exceed the available settlement funds, UTU adopted a pro rata formula for the settlement distribution.

After conducting a review of all the claims, UTU discovered that the actual value of the grievance claims totaled $6.5 million. At the time that the review process ended, the settlement fund totaled $11.3 million. Based on the results of the review process, UTU reconsidered its initial settlement distribution plan. UTU decided to pay out the full $6.5 million value of the claims and divide the remaining $4.8 million by (1) paying $4.3 million equally to all UTU members, (2) paying $250,000 to UTU for administrative costs, and (3) retaining $250,000 to cover any erroneous underpayments or omitted payments. The settlement distribution was made in December 2002. Plaintiffs filed their lawsuit on April 17, 2003.

## IV. PROCEDURAL HISTORY

### A. *Initial Filing in State Court*

On April 17, 2003, Plaintiffs filed a Petition at Law and Jury Demand in the Iowa District Court for Linn County ("Iowa District Court") on behalf of themselves and all others similarly situated.[1] Plaintiffs' Petition alleged breach of constructive trust (Count I) and breach of contract (Count II) against UTU.

### B. *First Removal to United States District Court*

On May 13, 2003, UTU filed a Notice of Removal to the United States District Court for the Northern District of Iowa ("District Court"). On June 10, 2003, Plaintiffs filed a Motion to Remand pursuant to 28 U.S.C. § 1447(c).[2] Plaintiffs argued that remand

---

[1] *See* UTU's Notice of Removal (docket number 1), Exhibit B at 0002.

[2] 28 U.S.C. § 1447(c) provides in pertinent part:

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case

(continued...)

3

to the Iowa District Court was appropriate because their claims did not require interpretation of any collective bargaining agreements and, therefore, were not preempted by the Railway Labor Act. Plaintiffs' motion was granted on December 3, 2003.[3] The District Court determined that "Plaintiffs have not asserted a right under any collective bargaining agreement and that their claims do not require an interpretation of any collective bargaining agreement." *Thompson v. United Transportation Union*, 2003 WL 22859649, at *3 (N.D. Iowa 2003). Therefore, the District Court concluded that there was no preemption by the Railway Labor Act. *Id.* The District Court remanded the case and noted that UTU could "raise the terms of a collective bargaining agreement as a defense to the enforcement of the 1996 Settlement Agreement" in state court. *Id.*

### C. Class Certification in State Court

On January 13, 2004, Plaintiffs filed a Motion for Class Certification in the Iowa District Court pursuant to Iowa Rule of Civil Procedure 1.261. On June 8, 2004, the Iowa District Court entered a Ruling granting Plaintiffs' motion and certified a plaintiff class.[4] The Iowa District did not, however, authorize notice to the class and such notice was never sent. On June 17, 2004, UTU filed a Notice of Appeal.[5]

On April 19, 2005, while UTU's appeal was still pending, Plaintiffs filed a Motion for Leave to Amend Petition to add a claim for promissory estoppel. UTU resisted, arguing that the Iowa District Court lacked jurisdiction due to the pending appeal of class

---

[2](...continued)
    shall be remanded. . . .

[3] *See* Order (docket number 19), 03-cv-0049-LRR, *Thompson v. United Transportation Union*, 2003 WL 22859649 (N.D. Iowa 2003).

[4] *See* UTU's Notice of Removal, Exhibit B at 0027-0035.

[5] *Id.*, Exhibit B at 0036.

certification. On May 26, 2005, the Iowa District Court entered an Order staying Plaintiffs' motion until the conclusion of the pending class certification appeal.[6]

On September 14, 2005, the Iowa Court of Appeals concluded that the Iowa District Court did not abuse its discretion in certifying the class. *See Thompson v. United Transportation Union*, 2005 WL 2216965 (Iowa Ct. App. 2005). On November 8, 2005, the Iowa Supreme Court denied further review.[7] Procedendo issued on November 21, 2005.[8]

### D. Defendant's Motion for Summary Judgment in State Court

On December 5, 2005, UTU filed a Motion for Summary Judgment arguing that the federal duty of fair representation preempted Plaintiffs' state-law claims. Plaintiffs resisted and argued that their state-law claims were not preempted by the duty of fair representation because the claims did not arise out of representational conduct. On April 17, 2006, the Iowa District Court granted UTU's motion for summary judgment.[9] The Iowa District Court determined that "the actions of the union over which Plaintiffs have filed their complaint falls within the duty of fair representation owed to Plaintiffs by Defendant."[10] Thus, the Iowa District Court concluded that Plaintiffs' state-law claims for breach of constructive trust and breach of contract were preempted. Specifically, the Iowa District Court found that:

> Just as in the O'Hara case, the collective bargaining agreement here is the subject of the settlement agreement and is the source of the monetary amounts awarded under the settlement agreement. Therefore, pursuant to a field preemption analysis,

---

[6] *Id.*, Exhibit B at 0060-0061.

[7] *See* UTU's Notice of Removal, Exhibit B at 0087.

[8] *Id.*, Exhibit B at 0089.

[9] *Id.*, Exhibit B at 0092-0105.

[10] *Id.*, Exhibit B at 0100.

Iowa law is preempted by federal law based on Congress having precluded states from regulating union conduct. *See* BMWE [v. Chicago and North Western Transportation Co.], 514 N.W.2d [90,] 93 [(Iowa 1994)].[11]

---

[11] The O'Hara case refers to *O'Hara v. District No. 1-PCD*, 56 F.3d 1514 (D.C. Cir. 1995). *O'Hara* involved a dispute over the distribution of an arbitration award. The D.C. Circuit Court of Appeals noted that:

> The arbitration process gives 'meaning and content' to the collective bargaining agreement; and the arbitration award here flowed directly from the arbitrator's finding that the employer had violated the collective bargaining agreement. As the district court properly recognized, 'the agreement is both the subject of the award's analysis and the source of the award's authority.'

*Id.* at 1519 (citation and quotation omitted). Thus, the D.C. Circuit concluded that:

> If the plaintiff employees' allegations are correct, the union's conduct has directly and significantly frustrated their ability to vindicate their contractual rights under the collective bargaining agreement. As the Supreme Court has held: "'it makes little difference whether the union subverts the arbitration process by refusing to proceed . . . or follows the arbitration trail to the end, but in so doing subverts the arbitration process by failing to fairly represent the employee. *Hines [v. Anchor Motor Freight, Inc.]*, 424 U.S. [554,] 572, 96 S. Ct. [1048,] 1060 [(1976)] (quoting *Margetta v. Pam Pam Corp.*, 501 F.2d 179, 180 (9th Cir. 1974)). To us, it likewise makes little difference whether the union instead subverts the arbitration process-and in turn the collective bargaining process-by fairly representing the employee throughout the arbitration but then, as the plaintiff employees allege here, by refusing to distribute the proceeds of the award to its rightful recipients.

*Id.* at 1521-22.

The *BMWE* case refers to an Iowa Supreme Court case where railway employees and railway employees' union appealed from a dismissal on federal law preemption grounds of their effort to enjoin implementation of their employer's drug testing policies.

(continued...)

(*See* UTU's Notice of Removal, Exhibit B at 0101.) The Iowa District Court dismissed both claims, but "granted leave to plead a claim of breach of duty of fair representation against Defendant."[12] On April 26, 2006, Plaintiffs filed a motion requesting the Iowa District Court to reconsider its summary judgment ruling. On June 20, 2006, the Iowa District Court denied Plaintiffs' motion, and granted Plaintiffs 10 days "to plead a claim of breach of fair duty of representation against Defendant."[13]

On June 30, 2006, Plaintiffs filed a "Motion for Stay of All Proceedings Pending and [sic] Interlocutory Appeal or Motion to Amend Petition" ("Motion for Stay/to Amend").[14] In the Motion for Stay/to Amend, Plaintiffs sought the following:

> (1) A stay of all proceedings pending an Interlocutory Appeal of the District Court's rulings dismissing all state claims or (2) granting of the Motion to Amend to state a claim for breach of a duty of fair representation and one other claim.

(*See* UTU's Notice of Removal, Exhibit B at 0109.) Attached to the Motion for Stay/to Amend is a document entitled "Amended Petition."[15] In their "Amended Petition," Plaintiffs state two claims: breach of duty of fair representation (Count III) and breach of a duty of voluntarily assumed (Count IV).[16] Interestingly, Plaintiffs' "Amended Petition" attempts to incorporate by reference the allegations contained in paragraphs 1-45 of the Petition which was dismissed in the summary judgment ruling filed on April 17, 2006.

---

[11](...continued)
*BMWE*, 514 N.W.2d at 91.

[12] *See* UTU's Notice of Removal, Exhibit B at 0105.

[13] *See* UTU's Notice of Removal, Exhibit B at 0107-0108.

[14] *Id.*, Exhibit B at 0109-0112.

[15] *Id.*, Exhibit B at 0113.

[16] *Id.*

On July 20, 2006, the Iowa District Court filed an Order granting the Motion for Stay of All Proceedings Pending an Interlocutory Appeal.[17] On February 14, 2007, the Iowa Supreme Court denied Plaintiffs' application for interlocutory appeal.[18] Procedendo issued on February 16, 2007.[19]

### E. Second Removal to United States District Court

On February 27, 2007, UTU filed a second Notice of Removal from the Iowa District Court to the United States District Court pursuant to 28 U.S.C. §§ 1441 and 1446. On the same date, UTU also filed an Answer to Amended Petition.[20] On May 30, 2007, UTU filed a Motion for Summary Judgment seeking summary judgment on Counts III and

---

[17] *Id.*, Exhibit B at 0115. The Court notes that in making its determination to grant the Motion for Stay of All Proceedings Pending an Interlocutory Appeal, the Iowa District Court did not refer to the motion by its full title; but instead, omitted the "Motion to Amend Petition" portion of the title. Furthermore, the Iowa District Court's Order did not address the issue of amending the petition. The Iowa District Court's Order simply stated:

> Having reviewed the arguments of the parties, the [Iowa District] Court finds the Motion for Stay of All Proceedings Pending an Interlocutory Appeal should be granted in order to ensure Plaintiffs' viable state law claims are adjudicated by [the Iowa District] Court.
>
> **IT IS THEREFORE ORDERED** that the Motion for Stay of All Proceedings Pending an Interlocutory Appeal is **GRANTED**. This action is stayed pending a determination by the Iowa Supreme Court on Plaintiffs' application for interlocutory appeal.

(*See* UTU's Notice of Removal, Exhibit B at 0115.) Additionally, the Iowa District Court did not file the "Amended Petition" attached to the Motion for Stay/to Amend. Thus, it appears that the Iowa District Court did not rule on the second portion of Plaintiffs' Motion for Stay/to Amend.

[18] *See* UTU's Notice of Removal, Exhibit B at 0119.

[19] *Id.*, Exhibit B at 0121.

[20] UTU's answer responds only to numbered paragraphs 46-49 of the Amended Petition. *See* Answer to Amended Petition (docket number 2), 1:07-cv-00022-LRR.

IV of the "Amended Petition." On November 15, 2007, the District Court filed an Order denying UTU's motion as moot for lack of subject matter jurisdiction.[21] Specifically, the District Court reasoned:

> Here, there is no federal question subject matter jurisdiction because there are no claims pending before the court. The two claims in the Petition, Count I and Count II, were dismissed by the state court on April 17, 2006. Plaintiffs have not filed an Amended Petition since that time. Although Plaintiffs attached an Amended Petition to their Motion for Stay/to Amend in the state court proceedings, the state court never granted Plaintiffs' request to amend the Petition or directed the clerk to file the Amended Petition. . . . As such, there is no petition, complaint or claims pending before this court. It goes without saying that there can be no federal jurisdiction when there are no claims pending before the court.

*Thompson v. United Transportation Union*, 2007 WL 3431304, at *4 (N.D. Iowa 2007). Thus, the District Court remanded this case back to the Iowa District Court.

### F. Plaintiffs' Motion for Leave to Amend Petition in State Court

On February 14, 2008, following the second remand, Plaintiffs filed a Motion to Reconsider or, Alternatively, Motion for Leave to Amend Petition. On March 12, 2008, UTU filed a Motion to Dismiss. On April 29, 2008, the Iowa District Court filed a Ruling denying Plaintiffs' motion to reconsider, denying UTU's motion to dismiss, and granting Plaintiffs' motion for leave to amend petition.[22] Plaintiffs were ordered to "file and serve a separate Amended Petition setting forth their claims against Defendant."[23]

---

[21] *See* Order (docket number 19), 07-cv-0022-LRR, *Thompson v. United Transportation Union*, 2007 WL 3431304 (N.D. Iowa 2007).

[22] *See* UTU's Notice of Removal, Exhibit B at 0125-0126.

[23] *Id.*, at 0126.

## G. Third Removal to United States District Court

On May 12, 2008, Plaintiffs filed an Amended Petition at Law and Jury Demand.[24] Plaintiffs' Amended Petition included claims of breach of constructive trust (Count I), breach of contract (Count II), and breach of duty of fair representation (Count III).[25] On May 29, 2008, UTU removed this case for a third time to the United States District Court where it is currently docketed as *Thompson v. United Transportation Union*, 08-cv-0065-LRR.[26] On the same date, UTU also filed an Answer (docket number 2) to the Amended Petition. On August 5, 2008, Plaintiffs filed the instant Motion to Amend Complaint (docket number 9), seeking to add a claim of promissory estoppel.

## V. DISCUSSION

Absent consent of the adverse party, "a party may amend the party's pleading only by leave of court." FEDERAL RULE OF CIVIL PROCEDURE 15(a). However, "leave shall be freely given when justice so requires." *Id.* Thus, the FEDERAL RULES OF CIVIL PROCEDURE liberally permit amendments to pleadings. *Dennis v. Dillard Dept. Stores, Inc.*, 207 F.3d 523, 525 (8th Cir. 2000).

The right to amend is not, however, without limitation.

> [T]here is no absolute right to amend and a court may deny the motion based upon a finding of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies in previous amendments, undue prejudice to the non-moving party, or futility.

*Baptist Health v. Smith*, 477 F.3d 540, 544 (8th Cir. 2007) (citing *Doe v. Cassel*, 403 F.3d 986 (8th Cir. 2005)). Delay alone, however, is not sufficient justification for denying

---

[24] *See* UTU's Notice of Removal, Exhibit B at 0127-0141.

[25] It should be recalled, however, that Counts I and II were dismissed in the Iowa District Court's summary judgment ruling filed on April 17, 2006. *See* UTU's Notice of Removal, Exhibit B at 0105 ("Plaintiffs' beach of constructive trust and breach of contract claims are dismissed.").

[26] *See* Notice of Removal (docket number 1).

a motion to amend; prejudice to the nonmovant must also be shown. *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (1998) (citations omitted). "Any prejudice to the nonmovant must be weighed against the prejudice to the moving party by not allowing the amendment." *Id.*

UTU argues that Plaintiffs' motion to amend should be denied for two reasons. First, UTU claims that it will suffer substantial prejudice due to Plaintiffs' undue delay in seeking leave to amend their Petition to add a promissory estoppel claim. Specifically, UTU asserts that it will be substantially prejudiced by having to re-open discovery, engage in repetitive summary judgment proceedings, and engage in other litigation. Second, UTU argues that Plaintiffs' proposed amendment is futile because the federal duty of fair representation preempts Plaintiffs' promissory estoppel claim.

### A. Did Plaintiffs Timely File the Motion to Amend Complaint?

UTU argues that there has been undue delay in Plaintiffs' request for leave to amend their petition. Specifically, UTU points out that the motion to amend comes five years after Plaintiffs filed their initial petition and nearly three years after the close of discovery. UTU also argues that Plaintiffs had ample opportunity to amend their Petition in the past five years, but failed to do so. Specifically, UTU points out that:

> over three years ago, Plaintiffs moved to amend the [petition] to add the same claim for promissory estoppel. However, the Iowa [D]istrict [C]ourt declined to decide the request during the pendency of [UTU's] appeal of class certification and instructed Plaintiffs to re-file at the conclusion of the appeal. But Plaintiffs never renewed their request to amend. Instead, they agreed to go forward with summary judgment proceedings on preemption based only upon the two state-law claims in their original petition. When Plaintiffs lost the preemption issue, they requested leave to amend to add a Federal DFR [duty of fair representation] claim, but did not seek to add a promissory estoppel claim. Thus, Plaintiffs have repeatedly foregone opportunities to plead a promissory estoppel claim.

(*See* UTU's Resistance to Plaintiffs' Motion to Amend Complaint at 8.) UTU further argues that it will be substantially prejudiced if Plaintiffs are allowed to amend their petition. UTU maintains that promissory estoppel constitutes a wholly new theory of recovery which would require re-opening discovery on the issue of detrimental reliance. UTU also asserts that it will be prejudiced because the parties have already litigated the issue of preemption on summary judgment and it "should not be put to the time and expense of litigating the preemption issue again when Plaintiffs could have added their promissory estoppel claim prior to the summary judgment proceedings [in the Iowa District Court]."[27]

Plaintiffs note that this matter was removed to federal court for the third time on May 29, 2008, and no trial date has been set. Thus, Plaintiffs argue that permitting the amendment to the petition would not cause undue delay or prejudice to UTU. Specifically, Plaintiffs argue that UTU's:

> suggestion . . . that Plaintiffs are somehow responsible for the extraordinary length of time this matter has been pending is disingenuous to say the least. . . . [UTU's] three removals and related interlocutory appeal application to the Iowa Supreme Court and its intense motion and discovery practices have all taken an inordinate amount of time.

(*See* Plaintiffs' Reply at 4.) Plaintiffs further argue that the amendment would not require additional discovery because their promissory estoppel claim arises out of the exact same set of facts as all of their other claims. According to Plaintiffs, UTU:

> represented to Plaintiffs in 1996 that the settlement funds at issue would be distributed exclusively to them. In reliance on those representations, Plaintiffs approved the 1996 Settlement Agreement and 1996 Allocation and Distribution Agreement. In 2002, the Union distributed the funds to itself and others to Plaintiffs' detriment.

(*See* Plaintiffs' Reply at 5.)

---

[27] *See* UTU's Resistance to Plaintiffs' Motion to Amend Complaint at 10.

FED. R. CIV. P. 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." *Id.* The United States Supreme Court has instructed that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). This action was recently removed to federal court on May 29, 2008. A scheduling order has not been entered in this matter. Furthermore, neither a trial date, nor any discovery deadlines have been set. Accordingly, the Court finds that allowing Plaintiffs to amend their petition will not result in any undue delay. Additionally, because no discovery deadlines have been set and a promissory estoppel claim is similar in nature to Plaintiffs' previous contract claims, the Court concludes that UTU would not be unduly prejudiced by allowing Plaintiffs to amend their petition. Therefore, the Court finds that Plaintiffs' motion to amend is not untimely.

### B. Is Plaintiffs' Proposed Amendment Futile?

UTU argues that Plaintiffs' motion to amend should be denied because the proposed amendment is futile. Specifically, UTU argues that Plaintiffs' federal duty of fair representation claim preempts Plaintiffs' proposed state law promissory estoppel claim. Plaintiffs argue, however, that the District Court's 2003 Order granting Plaintiffs' motion for remand precludes any finding of preemption because the District Court found that Plaintiffs' claims did not arise under any collective bargaining agreement. Thus, Plaintiffs contend that amending their petition to include a promissory estoppel claim will allow:

> an existing state claim for this Court to either try or remand in the event it determines that Plaintiffs cannot state a claim for breach of duty of fair representation. Insofar as the facts clearly support each element of a prima facia claim of promissory estoppel, the interests of justice require that the proposed amendment be allowed.

(*See* Plaintiffs' Reply at 4.)

"Futility is a valid basis for denying leave to amend." *U.S. ex rel. Lee v. Fairview Health System*, 413 F.3d 748, 749 (8th Cir. 2005). When a court denies leave to amend on the ground of futility, it means that the court reached a legal conclusion that the amendment could not withstand a motion for judgment on the pleadings. *In re Senior*

13

*Cottages of America, LLC*, 482 F.3d 997, 1001 (8th Cir. 2007). Because UTU's futility argument relies on the doctrine of preemption and that doctrine's relationship to the federal duty of fair representation, the Court will review the law regarding those legal doctrines.

At the outset, the Court determines that Plaintiffs' argument that the District Court's 2003 Order granting Plaintiffs' motion for remand precludes any finding of preemption is misplaced. The 2003 Order concerned the issue of removal jurisdiction on claims of breach of constructive trust and breach of contract. The Court noted that "a defendant is not permitted to remove a case to federal court by injecting a federal question into an otherwise state law claim and thereby transform the action into one arising under federal law."[28] The issue presently before the Court is whether Plaintiffs' claim that UTU breached its duty of fair representation preempts the promissory estoppel claim Plaintiffs are seeking to add to their petition. The Court believes that the 2003 Order is not determinative of the instant issue.

The Supremacy Clause of the United States Constitution provides Congress with the power to preempt state law.[29] *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 208 (1985); *Nordgren v. Burlington Northern Railroad Co.*, 101 F.3d 1246, 1248 (8th Cir. 1996). Preemption of state law may occur in the following ways: (1) Congress may create express preemption by explicitly stating its intent in the federal law at issue; (2) Congress may impliedly preempt a field of law where the scheme of regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it; and (3) preemption may exist where state law conflicts with federal law. *Nordgren*, 101 F.3d at 1248 (citations and quotations omitted). "[T]he question whether a certain state

---

[28] *See* Order (docket number 19), 1:03-cv-0049-LRR, *Thompson v. United Transportation Union*, 2003 WL 22859649 (N.D. Iowa 2003).

[29] *See* U.S. Cont., art. VI, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land.").

action is pre-empted by federal law is one of congressional intent." *Lueck*, 471 U.S. at 208.

This matter is governed by the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq*. "'Congress' purpose in passing the RLA was to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes.'" *Gore v. Trans World Airlines*, 210 F.3d 944, 949 (8th Cir. 2000) (quoting *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994)). The standard governing preemption claims provides that "'a state-law cause of action is not pre-empted by the RLA if it involves rights and obligations that exist independent of the collective bargaining agreement.'" *Id.* (quoting *Norris*, 512 U.S. at 260). In other words, "'where the resolution of a state law claim depends on an interpretation of the collective bargaining agreement, the claim is pre-empted.'" *Id.* (quoting *Norris*, 512 U.S. at 261). This standard is "'virtually identical' to that employed under § 301 of the Labor and Management Relations Act" ("LMRA"). *Id.*; *see Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 ([A]n application of state law is pre-empted by § 301 of the LMRA . . . only if such application requires the interpretation of a collective-bargaining agreement.").

Additionally, "[b]ecause a union enjoys the exclusive right to represent its members in the collective bargaining process, the federal labor laws impose upon the union a duty of fair representation." *Beavers v. United Paperworkers International Union, Local 1741*, 72 F.3d 97, 100 (8th Cir. 1995); *see also Air Line Pilots Association, International v. O'Neill*, 499 U.S. 65, 74 (1991) (comparing the duty of fair representation to the duty owed by fiduciaries to their beneficiaries); *Vaca v. Sipes*, 386 U.S. 171, 177 (1967) ("The statutory duty of fair representation was developed over twenty years ago in a series of cases involving alleged racial discrimination by unions certified as exclusive bargaining representatives under the Railway Labor Act, *see Steele v. Louisville & N.R. Co.*, 323 U.S. 192; *Tunstall v. Brotherhood of Locomotive Firemen*, 323 U.S. 210, and was soon extended to unions certified under the N.L.R.A."). In *Arnold v. Air Midwest, Inc.*, 1994

WL 247442 (D. Kan. 1994), the United States District Court for the District of Kansas provided the following summary of the federal duty of fair representation:

> The duty of fair representation is a federal obligation which has been judicially fashioned from national labor statutes. There is no explicit statutory requirement of fair representation. Rather, the duty of fair representation was judicially developed as a necessary corollary of the NLRA and section 2, ninth, of the Railway Labor Act. These statutory mandates that the majority representative be the 'exclusive representative of all the employees' in the bargaining unit are the bases upon which the federal common law of fair representation evolved. [Citation omitted.]
>
> The federal duty of fair representation arises directly from the statutory obligations imposed by the RLA upon the exclusive representative. A union authorized to serve as the exclusive representative of a bargaining unit under RLA Section 2, 45 U.S.C. § 152 owes 'a corresponding duty . . . to exercise fairly the power conferred upon it on behalf of all those for whom it acts, without hostile discrimination against them.' *Steele v. Louisville & N.R. Co.*, 323 U.S. 192, 202-203 (1944)[.]

*Id.* at *5.

Several Circuit Courts of Appeals have concluded that a federal duty of fair representation ("DFR") claim preempts state law claims. *See Adkins v. Mireles*, 526 F.3d 531, 539 (9th Cir. 2008) ("The federal statutory duty which unions owe their members to represent them fairly also displaces state law that would impose duties upon unions by virtue of their status as the workers' exclusive collective bargaining representative. . . . To bring a successful state law action, aggrieved workers must make a showing of additional duties, if they exist, beyond the normal incidents of the union-employee relationship."); *Miranda v. National Postal Mail*, 219 Fed. Appx. 340, *343 (5th Cir. 2007) (Relying on *Richardson v. United Steelworkers of America*, 864 F.2d 1162 (5th Cir. 1989), the Fifth Circuit Court of Appeals concluded that "the federal duty of fair representation preempts state substantive law."); *Nelson v. Stewart*, 422 F.3d 463, 470

(7th Cir. 2005) (Relying on *Vaca v. Sipes*, 386 U.S. 171 (1967), the Seventh Circuit Court of Appeals concluded that the "duty of fair representation, for the enforcement of which a federal (and state) court action is authorized, completely preempts state law because of the congressional intent that federal law . . . entirely govern the duties which [a] . . . collective bargaining representative owes, by virtue of its position as such, to the workers it represents in that capacity."); *Thomas v. National Association of Letter Carriers*, 225 F.3d 1149, 1158 (10th Cir. 2000) ("Where a plaintiff's allegations fall within the scope of the duty of fair representation, federal labor law governs and ordinarily preempts any state-law claims based on those allegations."); *BIW Deceived v. Local S6, Industrial Union of Marine and Shipbuilding Workers of America*, 132 F.3d 824, 830 (1st Cir. 1997) ("[S]tate law is preempted whenever a plaintiff's claim invokes rights derived from a union's duty of fair representation.").

Several United States District Court decisions also conclude that a federal DFR claim preempts state law claims. *See Marcus v. Dolan*, 2008 WL 3822353 at *2 (D.N.J. 2008) ("State law claims of a breach of the duty of fair representation are preempted under the RLA. *Bensel* [*v. Allied Pilots Association*], 387 F.3d [298,] 321 [(3d Cir. 2004)] ("state-law causes of action are presumptively preempted where they concern conduct that is actually or arguably either protected or prohibited by federal labor relations law)."); *Lindsey v. ATU International*, 2008 WL 2434302 at *2 (N.D. Tex. 2008) ("A complaint stating a duty of fair representation claim alleges a breach by the Union of a duty grounded in federal statutes, and federal law governs the action. State law, therefore, is preempted whenever a plaintiff states a duty of fair representation claim."); *Garland v. U.S. Airways, Inc.*, 2006 WL 3692591 at *5 (W.D. Pa. 2006) ("Defendants cannot be liable to Plaintiff under any of his state-law theories because those purported causes of action are preempted and/or subsumed by his federal duty of fair representation claim."); *Cooper v. TWA Airlines, LLC*, 349 F. Supp.2d 495, 507-08 (E.D.N.Y. 2004) ("Because federal labor law defines the scope of the duty of fair representation a union owes to its members, state law claims that are 'mere refinements' of the duty of fair representation are preempted.");

*Flathau v. International Association of Machinists, Dist. 141*, 2003 WL 21219032 at *2 (W.D. Wash. 2003) ("When a plaintiff's claims are based on the union's failure adequately to represent her, the claims are preempted by the federal labor law governing the union's representation of the plaintiff."); *see also Arnold*, 1994 WL 247442 at *6 (Providing a list of cases supporting the proposition that "[f]ederal courts that have considered the preemption doctrine in the duty of fair representation context have consistently held that state law claims of union misconduct are preempted where the conduct at issue is subject to the union's statutory duties as exclusive representative, because that relationship is governed solely by the federal duty of fair representation.").

In this case, the Iowa District Court determined that "the actions of the union over which Plaintiffs have filed their complaint falls within the duty of fair representation owed to Plaintiffs by Defendant."[30] Plaintiffs' petition centers on a settlement agreement entered into between UTU and Union Pacific which resolved outstanding grievance claims filed by UTU on behalf of Plaintiffs and other similarly situated CNW employees prior to CNW's merger with Union Pacific. UTU, as Plaintiffs' collective bargaining representative, worked on behalf of Plaintiffs and similarly situated CNW employees to resolve their grievance claims in accordance with the collective bargaining agreement. Accordingly, the Iowa District Court found that "the collective bargaining agreement . . . [was] the subject of the settlement agreement and [was] the source of the monetary amounts awarded under the settlement agreement."[31] Thus, the Iowa District Court also determined that Plaintiffs had a federal duty of fair representation claim which would preempt their state law claims.[32] *See Beavers v. United Paperworkers International Union, Local 1741*, 72 F.3d 97, 100 (8th Cir. 1995) ("Because a union enjoys the exclusive right to represent its members in the collective bargaining process, the federal

---

[30] *See* UTU's Notice of Removal, Exhibit B at 0100.

[31] *Id.*, at Exhibit B at 0101.

[32] *Id.*, at Exhibit B at 0101-0105.

labor laws impose upon the union a duty of fair representation."). The Iowa District Court allowed Plaintiffs to amend their petition to allege a breach of the duty of fair representation.

On May 29, 2008, UTU removed the case to federal court. Now, Plaintiffs seek to amend their petition to include a state law promissory estoppel claim. The Court finds that Plaintiffs' claim for the breach of the federal duty of fair representation preempts their state law promissory estoppel claim. *See Nelson v. Stewart*, 422 F.3d 463, 470 (7th Cir. 2005) (The "duty of fair representation, for the enforcement of which a federal (and state) court action is authorized, completely preempts state law because of the congressional intent that federal law . . . entirely govern the duties which [a] . . . collective bargaining representative owes, by virtue of its position as such, to the workers it represents in that capacity."); *Arnold v. Air Midwest, Inc.*, 1994 WL 247442 at *6 (D. Kan. 1994) ("Federal courts that have considered the preemption doctrine in the duty of fair representation context have consistently held that state law claims of union misconduct are preempted where the conduct at issue is subject to the union's statutory duties as exclusive representative, because that relationship is governed solely by the federal duty of fair representation."); *see aslo Adkins v. Mireles*, 526 F.3d 531, 539 (9th Cir. 2008); *Thomas v. National Association of Letter Carriers*, 225 F.3d 1149, 1158 (10th Cir. 2000); *BIW Deceived v. Local S6, Industrial Union of Marine and Shipbuilding Workers of America*, 132 F.3d 824, 830 (1st Cir. 1997); *Cooper v. TWA Airlines, LLC*, 349 F. Supp.2d 495, 507-08 (E.D.N.Y. 2004). Accordingly, the Court determines that Plaintiffs' motion to amend should be denied as futile. *See In re Senior Cottages of America, LLC*, 482 F.3d 997, 1001 (8th Cir. 2007).

## VI. CONCLUSION

Plaintiffs' proposed amendment is futile because their duty of fair representation claim preempts the state law promissory estoppel claim. Therefore, Plaintiffs' motion to amend is denied.

## VII. ORDER

IT IS THEREFORE ORDERED that the Motion to Amend Complaint (docket number 9) filed by Plaintiffs is hereby **DENIED**.

DATED this 25th day of September, 2008.

JON STUART SCOLES
United States Magistrate Judge
NORTHERN DISTRICT OF IOWA